# Exhibit 2

CERTIFIED COPY

UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

BEFORE THE HONORABLE
DANIEL J. CALABRETTA, DISTRICT JUDGE PRESIDING

_____
                                )
JEFFREY OLSON, as an            ) Case No: 2:18-cv-00360-DJC-JDP
individual and on behalf of all )
others similarly situated,      ) Motion Hearing
                                )
Plaintiff,                      ) Date:  8/22/2024
                                )
        v.                      ) Pages 1 through 31
                                )
FCA US LLC f/k/a CHRYSLER       )
GROUP LLC, a Delaware           )
Corporation and DOES 1 through  )
10, inclusive,                  )
                                )
Defendants.                     )
_____

**REPORTER'S TRANSCRIPT OF PROCEEDINGS**

APPEARANCES:

For the Plaintiff:        KERSHAW TALLEY BARLOW PC
                          401 Watt Avenue
                          Suite 1
                          Sacramento, California CA 95864
                          By:  STUART C. TALLEY, ESQ.
                          By:  JACK ROBERT DAVIS, ESQ.

For the Defendants:       KLEIN THOMAS LEE & FRESARD
                          101 West Big Beaver
                          Suite 1400
                          Troy, MI 48084
                          By:  FRED J. FRESARD, ESQ.
                          By:  IAN EDWARDS, ESQ.

_____
OFFICIAL REPORTER:        Abigail R. Torres, CSR, RPR/RMR, FCRR
                          CSR No. 13700
                          United States District Court
                          Eastern District of California
                          501 I Street, Suite 4-100
                          Sacramento, California 95814

*Proceedings recorded by mechanical stenography.  Transcript produced by computer-aided transcription.*

**SACRAMENTO, CALIFORNIA; THURSDAY, AUGUST 22, 2024; 1:47 P.M.**

-oOo-

THE CLERK:  Calling Criminal [verbatim] Case 18-0360, *Olson v. FCA US, LLC.*

For the record, let me correct the case number.  It's Case No. 18-CV-0360, *Olson v. FCA US, LLC.*

THE COURT:  All right.  Counsel, can you please state your appearances for the record?

MR. TALLEY:  Good afternoon.  Stewart Talley for the plaintiffs.  I'm here with my associate, Jack Davis.  We've divided up the argument between the motion to compel arbitration and the motion to dismiss, if that's okay with the Court.

THE COURT:  That's fine.  Who has what, just so I can --

MR. TALLEY:  I'm doing the motion to dismiss, and Jack is going to be doing the motion to compel arbitration.

THE COURT:  Okay.

MR. TALLEY:  And this is his first oral argument in federal court, so...

THE COURT:  All right.  Well, welcome.

MR. DAVIS:  Happy to be here.

MR. FRESARD:  Good afternoon, Your Honor.

Fred Fresard and Ian Edwards for FCA US.  And we, likewise, are dividing and conquering.  I will be handling the

motion to compel arbitration.  And Mr. Edwards will be handling the motion to dismiss.

THE COURT:  All right.  Thank you, both.

So you have indicated this matter is set for defendant's motion to compel arbitration, as well as the motion to dismiss the Third Amended Complaint.  So what I think I'm going to do is start with the motion to compel arbitration, then go to the motion to dismiss, if we get there, and probably what I'm going to do is just for each claim, go back and forth.

I'm going to try to rule on this -- as much of this as I can today.  You know, you all have trial soon, so we need to get there.  I'm not saying I can do all of it today, but I'm going to do my level best.

All right.  First on the arbitration, I'll just tell you where I'm at right now, and then let you, kind of, tell me where I'm right or wrong.  I think the threshold issue here about whether there's an agreement between these parties to arbitrate is the question for the Court to decide, not the arbiter.  And I think the agreement is pretty clear.

It's between the dealership and the plaintiff.  The FCA is not a party.  So the agreement defines "we," "our," "us," and "lessor" to mean the lessor who signs the lease and its successor and assigns, which would not include FCA.  Now, it very well may be that some of the claims that have been brought could have been subject to the arbitration agreement.

And so, you know, when defendants point to the fact that the coverage of the arbitration agreement applies to related relationships, I don't think that goes to whether or not FCA can invoke the arbitration provision.  It goes to what kinds of claims could be covered by it once it's properly invoked.

I don't think that equitable estoppel applies here.  I think that *Felisilda* maybe is the best case for the defense, but there, the dealer was a party to the claim.  And the case of *Davis v. Nissan North America*, I think under that state court case, equitable estoppel wouldn't apply here.

And I've got to say, I'm really uncomfortable applying anything that has the word "equitable" in it, given that we're six years in, and this is the first time an arbitration agreement is being invoked.  I know it's a different plaintiff, but as I understand it, the former plaintiff had a very similar, if not identical, arbitration agreement.

But, in any event, I don't think equitable estoppel applies on its merits.  I also don't think FCA is the third-party beneficiary.  I think I'm bound by *Ngo v. BMW of North America*.  I know there have been some state cases that have been a little bit inconsistent with it, but no so much that I think I can or should deviate from Ninth Circuit case law, so I'm inclined to deny the arbitration at this point.

Given that, why don't I actually start -- well, it's defendant's motion, anyway, so I'll start with you,

Mr. Fresard.

MR. FRESARD: Yes. Thank you, Your Honor. Thank you for outlining where you're at. Obviously, we disagree with the Court's finding. We think *Coinbase* is very clear. It's the Supreme Court's most recent pronouncement on the issue. And it says that -- disputes about arbitrability, whether a case is subject to being arbitrated, that when the contract is -- clearly sends those disputes to arbitration, that the Court doesn't have the jurisdiction that it needs to rule on the issues, but --

THE COURT: I always have jurisdiction to determine my jurisdiction.

MR. FRESARD: You do. You do. And I -- what -- is my supposition correct that -- is the Court finding waiver? Is the Court finding that FCA waived its opportunity to compel arbitration?

THE COURT: I mean, I think you have, but I'm not inclined to rule on that basis. I think even putting waiver aside, you're not a party to the arbitration agreement, so you can't invoke it, and I don't think equitable estoppel and/or third-party beneficiary would apply, so I'm kind of ignoring the waiver argument, at this point.

MR. FRESARD: All right. And, then, we did have a third argument, Your Honor, on being able to enforce as a non-signatory based on the plain language of the arbitration

agreement, and we cited it in support of that, the *Sherer v. Green Tree Servicing* case.  It was a Fifth Circuit case.  But found that -- and I think this is sort of the thrust of our entire argument throughout our motion -- found that without the lease agreement or without the purchase of the vehicle, the plaintiff has no case.  That the warranty that the plaintiff got when the plaintiff bought the vehicle arose out of that agreement, and so FCA could be the only other party -- or other relationship that could possibly be involved when that's referenced in the arbitration agreement.

And I think, Your Honor, if we end up heading to trial, you will hear repeatedly from the plaintiffs that -- that this whole case is about what occurred at the point of sale and what that transaction was.

And their argument is that Mr. Olson, had he known about the age or defect, would not have entered into the lease at all or would have paid less for the lease.

THE COURT:  But I think case -- it seems, though, that, at least in California, you know, they're not -- they're not suing that individual for something they did to violate the lease.  Right.  They're suing under the warranty.  That's a separate document.  I know it's incorporated in the lease. They get the warranty because they've leased the vehicle.

But I thought there were several California cases that said, That's still a different document.  You don't get to --

FCA doesn't then -- I think that kind of goes to the same thing as equitable estoppel.

MR. FRESARD:  Well, I think, Your Honor, one of the cases you might be relying on is that *Kramer v. Toyota* Ninth Circuit case that the plaintiffs cited to.  And in that case, the Court said the Court should not assume that the parties agreed to arbitrate arbitrability, unless there's a clear and unmistakable evidence that they intended to do so.

I would ask the Court to go back and look at the arbitration agreement that was quoted and was blocked out in the *Kramer* decision.  And the thing that the *Kramer* Court really pointed at was that that arbitration agreement only used the words "you" and -- either "you" or "we."  "We" being the dealer.  There was no reference to any other relationships anywhere in the arbitration agreement that's the subject of the *Kramer* decision.

We look at Olson's arbitration agreement, and it clearly goes beyond and adds -- in addition to saying "any claim or dispute," it adds any related transaction or relationship.  And the only related relationship could possibly be the manufacturer of the vehicle with which plaintiffs are claiming they have a problem and that there's a defect.

So I would -- would encourage the Court to go back and look at the language of that arbitration agreement in *Kramer* and how limited it is -- how tight it is.  It doesn't mention

anybody else, just the dealer and the purchaser, so *Kramer* Court said nobody else is mentioned here.  You can't come in, manufacturer, and try to enforce it.

Our position is that our arbitration agreement contains the, quote/unquote, magic words.

THE COURT:  All right.  Thank you.

Mr. Davis?

MR. DAVIS:  Thank you.  And like Mr. Talley said, I'm happy to be here for my first oral argument, and it's an interesting one because, you know, we are not even at the arbitration agreement having been properly invoked here, including the delegation clause, because as you've recognized, the entire clause is encapsulated within the balance of "at your" or "our election," "between you" and "us."

And so neither "you," who is Mr. Olson in the contract, or "us," who is the dealership AutoNation, not FCA, neither of those parties have invoked the arbitration or delegation clause here.

And now, as Mr. Fresard says, the standard under *Coinbase* and all the other recent cases is when the contract clearly sends an arbitrability dispute to arbitration.  Now, the full standard is the clear and unmistakable evidence standard.  And as I think you recognize, there is certainly not clear and unmistakable evidence that Mr. Olson intended or AutoNation intended to send the arbitrability dispute to

arbitration.  And I believe you have it spot on with, you certainly have jurisdiction to decide your own jurisdiction and that, more or less, ends the matter.

But I will say a little bit more about the magic words here.  So the heart of their argument really is about this word "relationship."  And now, Your Honor, under our view, this is not superfluous language.  It still makes perfect sense that if there's a dispute between the signatories, you know, between Mr. Olson and the dealership, that might involve another person, say, perhaps the dealership's independent contractors or employees or loan servicer.  You know, that makes sense, but it's still only invokable by the signatory.

So it's not superfluous language.  And, in fact, I believe it's FCA's argument that would actually create superfluous language here because the phrase "at your" or "our election" would become superfluous if someone who is not "you" or "we" can elect to invoke this arbitration clause.

Now, on equitable estoppel, and what they're saying about the point of sale, if you look at the selection from the complaint that they're quoting in our reply -- or their reply, we only referred to the lease agreement at the very highest level.  It's certainly not with a degree of specificity required to create equitable estoppel here or anything like that.

The heart of the case is really about what Mr. Olson

knew at the point of sale, and that is a far more complex issue and doesn't really relate to the lease agreement at all.

And now, you know, this -- this might be my first argument, but I know, you know, to not continue arguing when the Court has indicated certain things but --

THE COURT:  You are wise beyond your years.

MR. DAVIS:  I'll just briefly touch on waiver and -- and third-party beneficiary.  We've litigated this case for six years, and there's been a summary judgment motion.  That is the quintessential ruling on the merits.  And to have -- to hand FCA an arbitration here would be to hand them a redo of that, not to mention class cert and *Daubert* motions.  And like you said, this would be clearly inequitable.

And for third-party beneficiary, it would have been easy to -- for this contract to reference an auto manufacturer. It didn't.

So if you have no further questions, thank you.

THE COURT:  All right.  I guess, the -- you know, you kind of hinted at this, you know, in terms of giving meaning to -- you know, why the parties included this term including "other relationships," you know, the defendant's argument is the only other relationship that could really be here is the manufacturer.

Do you agree with that?

MR. DAVIS:  No.  I think, perhaps -- I mean, just to

come up with one, the loan servicer that would arise under this lease, I mean, that's -- that's clearly related to the actual lease. That might be another relationship. And, you know, even if, you know, we construe "relationship" to potentially include a manufacturer, it's still encompassed within "at your" or "our election" so, really, it's -- it's -- in terms of fighting about that issue, it's kind of a nonstarter.

THE COURT: All right. Thank you.

Mr. Fresard, anything you want to add in response?

MR. FRESARD: Just briefly, Your Honor, on the -- on counsel's statement that one of the other relationships could be the loan servicer, that was directly the issue addressed by the *Sherer* Court, the Fifth Circuit in the *Sherer v. Green Tree Servicing*, where the Court made the commonsense ruling that a loan servicer is the type of relationship -- even though not in the arbitration, not named in the arbitration, is the type of relationship -- is the only type of relationship that the parties could be referring to. It's got to be the manufacturer or the loan servicer.

And the *Sherer* Court said, indeed, without the loan agreement, there would be no loan for *Green Tree* to service. And the same here, without the sales agreement, without the lease agreement, there would be no vehicle for FCA to warrant, and there would be no cause of action by plaintiffs for breach of warranty, and we can be certain that the -- the lease

agreement will be admitted at trial as an exhibit as evidence that the plaintiff bought the vehicle in a case against FCA.

THE COURT: All right. Thank you.

I am going to deny the motion to compel arbitration. You know, the -- the idea that there's this related relationship language goes to the kinds of claims that can be brought, not who may invoke the arbitration agreement. And I think the idea that whenever, you know, a document can be used as an exhibit in trial, whoever is part of that trial can invoke the arbitration agreement, I think just takes it too far.

And, you know, what are the merits of the Fifth Circuit decision under California law; I think California courts are clear that there has to be clear and unmistakable assent to the contract, given the very clear definition of "you" versus "we" and "us" defining who's a party to it. It's clear that FCA is not a party.

And for the reasons I've already stated, I don't think equitable estoppel and third-party beneficiary exceptions to that general rule that it has to be a party to invoke an arbitration clause apply. And so motion to compel is denied.

Let's turn to the motion to dismiss. I think what I'd like to do is -- I don't want 20 minutes per claim, but let's briefly talk about each one in order. And I'm make a ruling where I can.

So, first, let's start with failure to plead fraud with particularity.  Mr. Edwards, why don't I start with you and do a back-and-forth.

MR. EDWARDS:  Yes, Your Honor.

Plaintiff's chief argument against application of Rule 9(b)'s heightened pleadings standards, the CLRA claim, is that some Courts have declined to follow the -- I think it's *Marolda* case, but the *Marolda* case has not been overturned. And the cases that decline to follow the *Marolda* case noted that there were exceptional circumstances requiring a departure from applying Rule 9(b)'s heightened pleading standard to CLRA claims, but those exceptional circumstances do not exist here.

The logic of not applying a heightened pleading standard to a fraud-based omissions claim is that at the pleading stage, the plaintiff probably doesn't know more than a low level of factual information --

THE COURT:  But you --

MR. EDWARDS:  That's not this case.

THE COURT:  Well, I mean, and I think maybe of all the claims you've made, the fraud one sticks in my craw the most. I mean, the whole point of requiring heightened pleading for fraud is that, you know, a poor defendant has no way of knowing, you know, what conduct is being complained of.

This is a six-year-old case where you're done with discovery.  You had this exact same allegation when the

complaint was first filed, and you never raised it. So, you know, I kind of get that, you know, if there's -- you know, if they haven't met the elements as a matter of law that you can raise it at any time because they got -- you got to prove that at trial.

The pleading requirement, though, is not about that. I mean, they still have to prove their fraud claims at trial. It's really about putting you on notice in a more substantive way so that you can properly defend. And that purpose just seems absent at this point in the proceedings.

MR. EDWARDS: Your Honor, prior to the Third Amended Complaint, Mr. Olson was -- and his claims were unknown to FCA. You know, they don't reference any materials he reviewed in purchasing his -- pardon me -- leasing his particular vehicle.

THE COURT: But when I look at a track-change version of it, the allegations they have are virtually identical. So I don't understand why, if the complaint was good enough as to Mr. Alger, it's not good enough as to Mr. Olson. They're not changing anything.

MR. EDWARDS: Understood, Your Honor. I'd say that FCA's decision not to file a 12(b) motion with regard to Mr. Alger does not necessarily grant extra meritorious heft to Mr. Olson's complaint in that regard.

We still think that the Court should apply 9(b), even though that it's -- you know, it might be a Third Amended

Complaint, but it's still Mr. Olson's first complaint.

THE COURT:  But it's still the class complaint.  I mean, the overlay on this is, it's a class complaint.  And Mr. Olson has always been part of the class.  Right.  I mean, I -- I'm a lot more sympathetic to the claims that are specific to Mr. Olson because you couldn't have known about that, such as, you know, when the warranty was breached.  I think Mr. Alger had a much better case on that than Mr. Olson did.  And that's certainly -- that is appropriate to raise.

MR. EDWARDS:  You know, Your Honor, we think that -- that at the moment, Mr. Olson is not the class representative.  He's still proceeding in an individual -- in his individual capacity --

THE COURT:  But they're still a certified class.

MR. EDWARDS:  We are in the odd procedural world where we have a certified class with no class representative, yes, Your Honor.

THE COURT:  All right.  Mr. Talley, why don't I turn it to you.

MR. TALLEY:  I think, Your Honor, you have it correct.  Not only were the claims known -- Mr. Olson's claims were known to the defendant.  They moved for summary judgment on those claims, on his claims because he a member of a class, and they lost.  So I think the Court has it right.  I mean, even if you were to grant the motion, I think there would be -- you would

give us leave to amend, and if we were going to amend, we'd just attach the thousands of pages of evidence that was submitted on the summary judgment motion to our complaint.

And, I don't know, maybe the Court can take judicial notice of that, but I think you have it right.  I think at this stage of the proceedings, the complaint adequately describes the allegations and the defendants know about those allegations.

THE COURT:  Okay.  I'm going to deny the motion to dismiss on the basis of failure to plead fraud with particularly.  I think the argument is waived, at this point. I'll leave it at that.

I do want to, though, pull out the punitive damage that was kind of lumped into the claim of fraud with particularity.  I do see things a little bit different there because I think that's going more toward a required element that -- what is it? -- Civil Code 3294 requires as an element that the employer have advanced knowledge of the unfitness, you know, or ratified that decision.

So, Mr. Talley, I don't see anything in the complaint that goes to that required element, so I'm inclined to dismiss and leave to amend.

MR. TALLEY:  Well, that's fine.  That will be easy to amend.  But I think that the complaint does allege that FCA was aware of the problem, was aware of the safety defect, was aware

of multiple complaints of injuries, accidents, and -- and refused to disclose that information to Mr. Olson.

We could add more to the complaint that shows that, if we need to.  We have a lot of -- a lot of evidence in this case.

THE COURT:  All right.  Mr. Edwards?

MR. EDWARDS:  Your Honor, we -- I think Your Honor has it right that they have not pleaded the necessary elements. For example, that, you know, an officer of the corporation had directed that type of activity.

With regard to leave to amend, we think we're pretty late in the game, at this point, and they've -- if we had --

THE COURT:  This is one you could have raised.  I mean, you kind of brought yourself this problem by waiting until the 11th hour to raise this issue.  I mean, wasn't this also an issue in the Second Amended Complaint?

MR. EDWARDS:  Well, Your Honor, we would say that plaintiffs brought this issue by filing a Third Amended Complaint in, you know, May of this year.

THE COURT:  And that ship sailed.  You know, I mean, I know you disagree with my ruling on that, but, you know, I -- I'm not -- I understand the oddity of allowing leave to amend at this late stage.  It's also odd that we have a motion to dismiss in this late stage.

So anything else you want to add on that?

MR. EDWARDS:  No, Your Honor.

THE COURT:  All right.  I'm going to grant the motion to dismiss on the ground that the punitive damages have not adequately pled a cause of action.  I will give leave to amend. I will caution plaintiffs, you know, my strong suggestion is to plead the bare minimum you need to.  This is not a -- don't use this as an excuse to add more than you need to.

All right.  And then next, turning to failure to adequately -- to allege that there are no adequate legal remedies for the UCL claim.  I think we're in a similar boat on that.  My inclination is that I don't think plaintiffs have said the magic words there.  I don't think that that language is there.  I'm inclined to grant leave to amend.

But at some point -- I think we're at this point, pleading the alternative is not appropriate.  I mean, I think plaintiffs need to land on what their theory is and now is probably the time.  So I guess my two questions are, you know, one, feel free to argue with me that you did actually plead that there were no adequate remedies or that equitable relief restitution aren't as good as what you might get under the UCL.

But what am I doing, at this point, with kind of claims in the alternative.

MR. TALLEY:  Yeah, first, I -- we can allege the magic words.  I don't think we need to, but we can.  And I think this has come up in a lot of cases where there's a UCL claim and a

false advertising claim that are brought together.

THE COURT:  Right.

MR. TALLEY:  And what's important to understand is that the elements of the two claims are different.  You -- you could win a UCL claim and lose the CLRA claim.  Because the UCL covers not just false advertising, it also covers unfair business practices that are different and -- they can be false advertising, but they could also be, for example, one of the theories that we have alleged was that they should have recalled this product when they knew there was a safety defect, and that they didn't.  And that is an unfair business practice under the statute.

So a jury could come back and say, "There's no false advertising here," but then there would be a question for you as to whether they engaged in an unfair business practice.  So you could have -- you could win one and lose the other.  So until we get to the very end of the case and actually have a trial, I think it's too early to decide which claim -- which claim should stand and which one shouldn't.

THE COURT:  Okay.  Mr. Edwards?

MR. EDWARDS:  Yes.  I would say that that argument is out of step with binding Ninth Circuit precedent, particularly the *Sonner* case, Your Honor.  While the UCL and the CLRA may have different elements, they're also fundamentally different legal approaches.  One is a legal claim, and one is an

equitable claim.  To say that we should hold permit -- hold the door open for plaintiffs to maintain both legal and equitable claims through a jury verdict, to then let the Court decide on whether the legal or the equitable remedies will be pursued is contrary to *Sonner*.

The plaintiff has not pleaded, as you've noted, inadequate legal remedy.  And as to pleading in the alternative, while plaintiff does cite one case permitting pleading in the alternative a CLRA and a UCLA claim, the general trend from what we've been able to discern in the Eastern District of California is to not permit that type of pleading in the alternative of an equitable and a legal claim post *Sonner*.

Also, I might add, with regard to the recall, that's not to open up a huge can of worms there, Your Honor, but there's -- the issue of whether a -- a Court can assess civil damages against the defendant for failing to comply with a recall has been extensively weighed in on by numerous courts of appeals, and they generally conclude that the Motor Vehicle Safety Act preempts those type of issues, so that would be --

THE COURT:  Well, I understand you're responding to counsel's comments, but I'm certainly not prepared to take it there.  I think on this one, I am going to take it under submission.  I do think I'm going to have to dismiss the UCL claim for failure to plead inadequate remedy.  But I think to

more about leave to amend and whether at this stage pleading in the alternative, if that's really what's going on, is permissible or if it's something that could stay open through the verdict.

All right.  Let's turn to the Song-Beverly Act.  I mean, I'm having a hard time understanding why, when the Act covers goods that are either new product or a leased product, the fact that it was purchased new, and then the named plaintiff bought out the lease and retained the product, how that gets it from out of Song-Beverly.  So I'm inclined to deny on that Song-Beverly realm.

MR. EDWARDS:  Understood, Your Honor.  The language of the complaint stated that it was -- the Song-Beverly Act arose out of plaintiff's purchase, not his lease.  But I think if Your Honor is already granting leave to amend, then that -- that --

THE COURT:  Oh, it's the --

MR. EDWARDS:  It's the wording, yeah, because they talk about the purchase, but the purchase wasn't to the new vehicle.  They leased a new vehicle.  But I think if Your Honor is already inclined to grant leave to amend, then that handles that issue, as well.

THE COURT:  All right.  So, Counsel, can you change the word from "purchased" to "leased"?  Is that going to give you heartburn?

MR. TALLEY:  Yeah, we can do that.

THE COURT:  Okay.

MR. TALLEY:  But, you know, it's -- he leased it and purchased it.

THE COURT:  Right.  I mean, I think, liberally construed, I would say that I would deny the motion to dismiss on the Song-Beverly Act, if that's really what the argument is.  But no harm in, you know, Counsel, if you want to tweak that wording.  Certainly, I'll allow that in my granting leave to amend.

On the breach of expressed warranty claim, I mean, this one I most understand where the defendants are coming from, at least on the timing.  You know, I -- so I guess there's kind of three different issues.  Right.  There's whether there's been adequate pleading of reliance.  I don't think there has been.  I'd be inclined to grant leave to amend on that because I think that's a straightforward amendment if you can plead it.

And it's similar to what the Second Amended Complaint said as to whether the warranty claim covers design defects.  I think Judge England has made a decision on this in his prior summary judgment order.  And, in any event, I'm convinced by the analysis in the District Court's decision in *Tabak* [phonetic] that the warranty covers design defects.

I'm concerned, however, that I think Mr. Olson's

defect materialized too late.  It seems like California courts have held that these kinds of design defects have to occur within the period of the warranty.  And so I -- I'd be inclined to grant leave to amend, but I -- I don't know if you're going to be able to amend around that problem.

So why don't I start with you, Mr. Edwards, on that.

MR. EDWARDS:  Addressing that third point, Your Honor, we agree that the -- we think the case is pretty straightforward that the defect did have to manifest during the warranty period.  The warranty, as alleged in the Third Amendment Complaint, is a three-year, 36,000-mile, basic new vehicle warranty.  The defect alleged -- the defect manifest outside the window.  I think that's pretty straightforward.

For the record, also, that, you know, FCA disagrees with the Court's interpretation of its warranty as applied to design defects, not as opposed to defects of material and workmanship.  We -- we, at the company, have used that as the warranty applies to manufacturing issues, not design defect issues, but we do understand the Court's ruling on that but would like to preserve that for the record.

THE COURT:  Fair enough.

So, Mr. Talley, on the -- I mean, I think the cases are pretty clear in California, at this point, that --

MR. TALLEY:  I would agree there are cases that say what -- exactly what you said.  But what's important are the

cases that say a breach of warranty claim is based on the language of the warranty itself.

Many of the cases that they cite, the warranty itself says if there's a defect in material and it results in a malfunction, then the warranty is breached.  Their warranty doesn't say that.  Their warranty says if there's a defect in material, workmanship, or factory preparation, when the vehicle leaves the factory, it's covered, and they're going to replace the part.

The example we gave in our brief is, you bought your car, and there's a crack in the windshield because of a defective windshield because the material was defective, and it left the factory that way.  You don't have to wait for the windshield to shatter before you can bring it in and say, Hey, fix the windshield.

It's the same thing.  The contract doesn't say the product has to malfunction.  Now, the allegations in this case -- and this is present in -- if you look at Judge England's ruling on the class cert brief, the allegations are that this cracking of this material in the plastic bracket happens immediately.  Once the part is put together, once the headrest is set, the cracking starts.  And it's only whether the cracking reaches a critical level that the headrest explodes.

So our allegation in this case is that every single

class headrest is cracking, and it has cracks in it, and I think Judge England in his motion -- or in the ruling on class cert said the defect in this case is the uncertainty of knowing when your headrest is going to explode.

So I think if you read the actual text of the warranty, and you apply it to the facts of this case, it's clear that there was a defect in material at the time every class member bought the vehicle, and so it should be covered under the warranty.  There's also nothing in the warranty that says you have to discover the defect and bring the car in for repair during the warranty period.  There's no language in there that says that.

So I think the warranty in our case is a little different or different than the warranties in some of the cases that you've read.  And another important rule of law is that if there's any ambiguity in this warranty, that's to be resolved against the drafter.

So I think if you take all of that into consideration, every class member has a breach of warranty claim.  And that's why Judge England overruled their motion for summary judgment on the breach of warranty claim that was brought for the entire class.

THE COURT:  All right.  Any response?

MR. EDWARDS:  Yes, Your Honor.  I mean, the case law is clear that the breach of a warranty accrues when a repair is

denied.  You know, to carry Mr. Talley's cracked windshield claim forward, somebody would seek a repair of their cracked windshield.  They would -- somebody seeking a repair of the cracked windshield outside the warranty period wouldn't trigger a breach of implied warranty.

Moreover, Your Honor, this idea that the warranty can be breached when a product doesn't malfunction, we think stretches the breach of express warranty claim past the breaking point.

If you can say that a vehicle that has no objective outward signs of malfunction breaches a warranty, then there's functionally no way for any manufacturer or warrantor of goods to know that they have complied with their warranty obligations, and they have no certainty that they don't have lifelong liability for -- for an issue that might manifest well outside the warranty period.

THE COURT:  Okay.  I think on this one, I -- I'm -- on the failure to plead reliance, I'm going to grant with leave to amend.  I do think the warranty covers design defects.  I would deny on that ground.

On the ground of whether or not it materialized too late for Mr. Olson, I'm going to take that under submission.  I want to reread.  I think both of you made good points. Frankly, I'm going to reread the cases with the specific warranty language in mind.  And so in part of my written order,

I'll address that.

On this standing, I think, at some point -- and that point is probably as soon as possible -- I think plaintiffs need to remove to substitute the class representative.  I know in your motion to amend, you had included that.  I thought it was premature for me to make that decision so that, you know, defense could retake discovery, and, you know, have a better -- you know, be better prepared to respond to that.  I think the standing argument is wrapped up in that issue.  I think that really goes to whether or not Mr. Olson is a proper representative of the class.

My inclination is that I'm going to deny the standing argument.  I think the commonality of the specific design defect gives him standing, but I'm going to reserve that for the class cert stage so -- and I want to talk about that briefly.

So I'm -- I'm going to deny the motion to dismiss on standing grounds without prejudice so you can renew it at class, not certification, but a motion to change the named representative.  We should probably get that on file soon.

MR. TALLEY:  We have a scheduling order, I believe it's due mid-September.

THE COURT:  Oh, all right.  If I already put deadlines in, then great.  So I think as far as -- and you all -- I'll give you a chance to tell me if I'm wrong.  On the motion to

dismiss, I have denied it with respect to pleading fraud, with respect to the Song-Beverly Act and with the -- with respect to the warranty claim not covering design defects.

I think I have granted it with leave to amend on the pleading of punitive damages and granted it with leave to amend on failure to plead reliance.  I'm taking under submission failure to plead adequate remedies at UCL.  I have granted that.  But whether or not it's with leave to amend, I need to take under submission.  And then I'm taking under submission, the argument that the breach of expressed warranty claims should be dismissed because Mr. Olson's claim specifically was not timely.

Are there any issues I have not resolved, either that I haven't resolved today or that I haven't specified or taken under submission?

MR. TALLEY:  There was one additional argument that we -- that I wanted to bring up.  And we had this in our opposition on the breach of warranty claim.  One of the arguments that we made was that Mr. Olson did bring his car in for service, not repair of his headrest, but he did present his car for various services during the warranty period.  And if so -- and that is something that we can put into the complaint, if necessary.

THE COURT:  Okay.

MR. TALLEY:  So if there's a finding that you have to

bring the car in for repair during the warranty period --

THE COURT:  Okay.

MR. TALLEY:  -- we can potentially plead around that issue.

THE COURT:  I see.  All right.  So I will take that into account when I'm ruling on that portion of the express warranty claim.

In your mind, anything that I have not resolved on the motion to dismiss?

MR. TALLEY:  So one other issue is that if you want additional pleading on the UCL-CLRA issue, and the inadequate remedy, we can do that as well.

THE COURT:  I think -- my incli- -- my issue is more about whether you are effectively pleading a theory in the alternative, and whether it's too late to be doing that, at this stage.  I may force you to make an election.  I haven't made a decision on that.

MR. TALLEY:  Okay.

THE COURT:  That's more the issue.  In terms of just saying the magic words of, "There's not an adequate remedy of law," if that's the only basis to dismiss, I will give you leave to amend.

Anything from the defense's standpoint that I haven't resolved?

MR. EDWARDS:  No, Your Honor.  But I would like to

respond to this notion that, you know, Mr. Olson brought his car in for repairs a few times under the -- under the warranty period. We'd argue that just bringing your car into a dealership doesn't automatically trigger an obligation on the part of the warranting manufacturer to do a, you know, soup-to-nuts diagnosis of every potential issue.

You've got to alert them to the issue. And he didn't do that then. He still hadn't presented the vehicle for repair during the warranty period of the allegedly malfunctioning component.

THE COURT: But I take the point that if FCA knew that, Hey, there's this bracket that we know is going to fail that is a design defect, you know, shouldn't they have repaired it when he brought in his car?

MR. EDWARDS: That sounds, then, like we're getting into the territory of enforcing an equitable remedy.

THE COURT: Okay. All right. I will look at that portion and make a ruling. All right. I think that concludes today. Thank you, all, for the helpful argument. Hopefully, we made some progress. And I'll give you an order on this out -- the law clerk that is working on this is leaving in three weeks, so it will be before then.

MR. TALLEY: Thank you, Your Honor.

MR. FRESARD: Thank you, Your Honor.

(The proceedings were adjourned at 2:33 p.m.)

-oOo-

**C E R T I F I C A T E**

I, Abigail R. Torres, certify that I am a duly qualified and acting Official Court Reporter for the United States District Court; that the foregoing is a true and accurate transcript of the proceedings as taken by me in the above-entitled matter on 8/22/2024; and that the format used complies with the rules and requirements of the United States Judicial Conference.

Dated:  August 26, 2024

/s/ Abigail R. Torres

_____

Abigail R. Torres, RPR/RMR, FCRR
CSR No. 13700
U.S. Official District Court Reporter