UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

BRIAN FISHER, *et al.*,

      Plaintiffs,

                                 Case No. 23-cv-10426

v.                                Hon. Matthew F. Leitman

FCA US LLC,

      Defendant.

_____/

## ORDER GRANTING DEFENDANT'S
## MOTIONS TO COMPEL ARBITRATION (ECF No. 47, 52)

In this putative class action, Plaintiffs bring claims against Defendant FCA US LLC ("FCA") arising out of an alleged defect in the eTorque mild hybrid system of their FCA vehicles. (*See* First Am. Compl., ECF No. 20.)  FCA has now moved to compel several of the Plaintiffs – James Blyth, Tennyson James, Jerry Vanderberg, Adam Cartabiano, Arianna Rico, and William Smith (the "Arbitration Plaintiffs") – to arbitrate their claims.  FCA says that the Arbitration Plaintiffs are obligated to pursue their claims through arbitration under the terms of arbitration agreements that were included in their vehicle sales contracts. (*See* Mots., ECF No. 47, 52.)  The Arbitration Plaintiffs counter, among other things, that (1) FCA has waived any right it may have had to compel arbitration and (2) in any event, FCA

does not have standing to compel arbitration under the vehicle sales contracts because FCA is not a party to those contracts. (*See* Resps., ECF Nos. 50, 56.)

For the reasons explained below, the Court first concludes that FCA has not waived its right to compel the Arbitration Plaintiffs to arbitrate their claims. The Court next concludes that an arbitrator must decide whether the claims against FCA are subject to arbitration. Accordingly, the Court **GRANTS** FCA's motions to compel arbitration.

# I

## A

The Arbitration Plaintiffs each purchased a new or used FCA vehicle equipped with an eTorque mild hybrid system. The Arbitration Plaintiffs now say that the hybrid system is defective.

None of the Arbitration Plaintiffs purchased their vehicles directly from FCA; instead, they purchased the vehicles from car dealerships near their residences. In connection with their purchases, the Arbitration Plaintiffs entered into sales contracts with the dealerships. All of the sales contracts include an arbitration provision (the "Arbitration Provisions"). But the Arbitration Provisions are not the

same for all Plaintiffs.  In fact, some of the Arbitration Provisions include materially

different wording, terminology, and requirements.[1]

While the Arbitration Provisions differ in some important respects, they all

share one key similarity:  a clause that purports to delegate questions about the

---

[1] For example, the Arbitration Provisions do not all cover the same universe of claims.  Plaintiff James' Arbitration Provision provides that the term "claim" shall have the "broadest possible meaning" and "includes claims of every kind and nature, including but not limited to, initial claims, counterclaims, cross-claims and third-party claims whether based upon contract, tort (including unintentional and intentional torts, like fraud), constitution, statute, regulation, common law and equity (including any claim for injunctive or declaratory relief." (James Agreement, ECF No. 47-3, PageID.1514.)   But Plaintiff Vanderberg's Arbitration Provision specifically *excludes* from its definition of "dispute" a "claim relating to [FCA's] right to repossess the vehicle by self help, if permitted, or by judicial process." (Vanderberg Agreement, ECF No. 47-5, PageID.1521.)   Different still, Plaintiff Blyth's Arbitration Provision allows the parties to "retain the right to seek remedies in small claims court for disputes or claims within that court's jurisdiction," and it provides that "neither" party "waive[s] the right to arbitrate by […] filing an action to […] recover a deficiency balance, or for individual injunctive relief." (Blyth Agreement, ECF No. 47-2, PageID.1503.)   The Arbitration Provisions also require different arbitration forums and rules to be used during any arbitration.  For instance, Blyth's Arbitration Provision allows Blyth to "choose [the] American Arbitration Association […] or any other organization to conduct the arbitration" under that organization's rules "subject to [FCA's] approval." (*Id.*, PageID.1503. *See also* Vanderberg Agreement, ECF No. 47-5, PageID.1521, allowing Vanderberg to select JAMS Endispute, the National Arbitration Forum, the American Arbitration Association, or "another recognized arbitration organization agreeable to [FCA]" to conduct the arbitration "under the rules then in effect of the Arbitration Organization [Vanderberg] select[ed].")   But Plaintiff Rico's Arbitration Provision requires that an arbitration "must" be resolved by using the "Commercial Arbitration Rules of the American Arbitration Association […] in effect when the claim is filed." (Rico Agreement, ECF No. 52-3, PageID.1776. *See also* James Agreement, ECF No. 47-3, PageID.1514, requiring use of the American Arbitration Association and the rules of that organization).

arbitrability of any claim to the arbitrator in the first instance (the "Delegation Clauses"). (*See* Blyth Agreement, ECF No. 47-2, PageID.1503; James Agreement, ECF No. 47-3, PageID.1514; Smith 2023 Agreement, ECF No. 47-4, PageID.1518; Smith 2021 Agreement, ECF No. 52-4, PageID.1781; Vanderberg Agreement, ECF No. 47-5, PageID.1521; Cartabiano Agreement, ECF No. 52-2, PageID.1762; Rico Agreement, ECF No. 52-3, PageID.1776.)

**B**

Certain aspects of the procedural history of this action bear directly on the Arbitration Plaintiffs' contention that FCA waived its right to seek arbitration. The Court therefore recounts those parts of the history below.

The Arbitration Plaintiffs – together with several other Plaintiffs who are not subject to the current motions to compel arbitration – initially filed this action on February 17, 2023. (*See* Compl., ECF No. 1.) Plaintiffs later filed a First Amended Class Action Complaint on June 13, 2023. (*See* First Am. Compl., ECF No. 20.)

On July 21, 2023, FCA filed two motions. First, FCA moved to dismiss the First Amended Class Action Complaint for failure to state a claim on which relief could be granted. (*See* Mot. to Dismiss, ECF No. 24.) Second, FCA moved to compel all of the Plaintiffs to arbitrate their claims. (*See* Mot. to Compel, ECF No. 23.) That initial motion to compel arbitration was not based on the Arbitration Provisions and Delegation Clauses included in the Arbitration Plaintiffs' vehicle

sales contracts.  Instead, FCA moved to compel arbitration based on a different arbitration provision that was included in the Plaintiffs' written vehicle warranties. (*See id.*, PageID.746-750.)

The Court held a hearing on both motions on December 12, 2023. (*See* 12/12/2023 Mot. Hr'g Tr., ECF No. 36.)  During that hearing, the Court and counsel for FCA discussed whether there was an additional basis – beyond the arbitration provisions in the vehicle warranties – on which at least some of the Plaintiffs could be required to arbitrate their claims.  More specifically, the Court and counsel addressed whether some Plaintiffs could also be required to arbitrate their claims pursuant to arbitration provisions in their vehicle sales contracts.  Counsel for FCA explained that FCA did not have copies of those contracts and did not know whether any of the contracts contained arbitration provisions. (*See id.*, PageID.1189.) Counsel further explained that FCA planned to issue subpoenas for the contracts to the dealerships once discovery commenced and that FCA intended to "bring" those contracts to the Court's attention, if appropriate, once FCA received and had an opportunity to review the contracts:

> THE COURT: Let me ask you something. When I buy a car, or actually I lease, but I assume when people buy, there's a purchase agreement –
>
> MR. D'AUNOY: Yes.
>
> THE COURT: – and there's a lease agreement. Why isn't the arbitration provision in those documents?

MR. D'AUNOY: Because FCA US is not selling the vehicle, Your Honor. We are not a direct party to that transaction, so –

THE COURT: But I held in Cunningham versus Ford Motor Company, that you can enforce it even if it's between the dealer and the purchaser.

MR. D'AUNOY: Yes, Your Honor. And I'm aware of that. Some of the arbitration provisions with – between the dealers and vehicle purchasers do have third-party beneficiary, do have references to the vehicle manufacturers as coming within the terms of those warranties. You know, part of the problem is we don't have those purchase contracts. And so, until we get into discovery and until we ask plaintiffs for their purchase contracts – and they may very well have other arbitration provisions in those purchase contracts that are enforceable. But at this point, FCA US is simply not aware of those because they're between third parties and Plaintiffs. You know, so we're not saying that that may not be the case here as well. We just simply don't have those contracts at this point.

THE COURT: Didn't most of these folks buy from Chrysler dealerships?

MR. D'AUNOY: They did, Your Honor.

THE COURT: Couldn't you guys have gotten these documents from the dealerships?

MR. D'AUNOY: That is a possibility. I will tell you, typically with FCA dealers, we have to subpoena those records in order to go get records. You know, it's a – they're separate business entities. We can't just demand that they provide records to us. So I will tell you, the typical cadence is, we subpoena records from the dealerships. And if we get those records through responses

of subpoenas, that's when we typically would bring them
to the Court's attention.

(*Id.*, PageID.1189-1190.)

At the conclusion of the portion of the hearing addressing the motion to compel arbitration, Plaintiffs agreed to dismiss their express warranty claims. (*See id.*, PageID.1214.) Once Plaintiffs dismissed those claims, FCA agreed to withdraw its motion to compel arbitration based on the arbitration provisions in the written warranties. (*See id.*, PageID.1223-1224.) FCA said that it would renew the motion to compel arbitration, if appropriate, once it obtained the sales contracts through discovery and determined whether they contained arbitration provisions. (*See id.*)

FCA answered the First Amended Class Action Complaint on January 30, 2024. (*See* Answer, ECF No. 38.)   In its Answer, FCA included as an affirmative defense that "Plaintiffs and some or all of the members of the putative class have agreed to arbitrate their claims and thus such claims should be compelled to, and resolved by, arbitration." (*Id.*, PageID.1352.)

The parties then engaged in a pre-trial conference pursuant to Rule 16 of the Federal Rules of Civil Procedure, and they thereafter filed a joint discovery plan with the Court. (*See* Discovery Plan, ECF No. 40.)   Consistent with its earlier statements to the Court, FCA noted in the discovery plan that it "plan[ned] to seek" the "relevant contracts" from Plaintiffs during discovery and that it would also be

"subpoenaing records from third parties who sold . . . Plaintiffs' vehicles." (*Id.*, PageID.1362.)

On February 29, 2024, the Court issued a scheduling order formally beginning the period of fact discovery. (*See* Scheduling Order, ECF No. 41.)  Once discovery began, FCA issued subpoenas to the dealerships that sold the Arbitration Plaintiffs their vehicles.  FCA says that as soon as it obtained those sales contracts and learned that at least some of the contracts included the Arbitration Provisions and Delegation Clauses, it filed its now-pending motions compel arbitration. (*See* Mots., ECF Nos. 47, 52.)

## C

The Arbitration Plaintiffs oppose the motions to compel arbitration on several grounds. (*See* Resps., ECF Nos. 50, 56.)   First, they argue that FCA waived any right to compel arbitration by filing a motion to dismiss their claims on the merits before seeking to compel arbitration based on the Arbitration Provisions. (*See*, *e.g.*, Resp., ECF No. 50, PageID.1543-1550.)   Second, they contend that FCA lacks standing to compel arbitration under the Arbitration Provisions because FCA is not a party to the vehicle sales contracts. (*See id.*, PageID.1540-1543.)   Finally, the Arbitration Plaintiffs insist that (1) the Court, not the arbitrator, should decide whether their claims are arbitrable and (2) the Court should conclude that the claims should not be arbitrated. (*See id.*, PageID.1550-1565.)

## II

### A

Under the Federal Arbitration Act, 9 U.S.C. § 1 *et seq.* (the "FAA"), "[a] written agreement to arbitrate disputes arising out of a transaction in interstate commerce 'shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.'" *Hergenreder v. Bickford Senior Living Grp., LLC*, 656 F.3d 411, 416 (6th Cir. 2011) (quoting *Javitch v. First Union Sec., Inc.*, 315 F.3d 619, 624 (6th Cir. 2003) (quoting 9 U.S.C. § 2)).  The FAA "[m]anifest[s] a liberal federal policy favoring arbitration agreements," *id.* (internal quotation marks omitted), and it "was designed to override judicial reluctance to enforce arbitration agreements, to relieve court congestion, and to provide parties with a speedier and less costly alternative to litigation." *Stout v. J.D. Byrider*, 228 F.3d 709, 714 (6th Cir. 2000).  Pursuant to the FAA, any "doubt regarding the applicability of an arbitration clause should be resolved in favor of arbitration." *Id.* at 715.

### B

The Court begins with the Arbitration Plaintiffs' argument that FCA waived any right it may have had to compel arbitration.  The Court disagrees with that argument and concludes that FCA has not waived its right to seek arbitration.

**1**

Despite the "strong presumption in favor of arbitration . . . it has long been settled that a party can waive its contractual right to arbitration." *United States ex rel. Dorsa v. Miraca Life Scis., Inc.*, 33 F.4th 352, 357 (6th Cir. 2022) (quoting *Johnson Assocs. Corp. v. HL Operating Corp.*, 680 F.3d 713, 717 (6th Cir. 2012), *abrogated in part on other grounds by Morgan v. Sundance*, 596 U.S. 411 (2022)). "[A] party may waive an agreement to arbitrate by . . . taking actions that are completely inconsistent with any reliance on an arbitration agreement[.]" *Id.* (quoting *Johnson*, 680 F.3d at 717). However, "the waiver of the right to arbitration is not to be lightly inferred." *Borror Prop. Mgmt., LLC v. Oro Karric N., LLC*, 979 F.3d 491, 494 (6th Cir. 2020) (quoting *Johnson*, 680 F.3d at 717). Instead, "[t]he strong presumption in favor of arbitration works against finding waiver in cases other than those with the most compelling fact patterns." *JPD, Inc. v. Chronimed Holdings, Inc.*, 539 F.3d 388, 393 (6th Cir. 2008).

As the Arbitration Plaintiffs correctly observe, the filing of "a motion to dismiss that seeks 'a decision on the merits' and 'an immediate and total victory in the parties' dispute'" is often viewed as "entirely inconsistent with later requesting that those same merits questions be resolved in arbitration." *Solo v. United Parcel Serv. Co.*, 947 F.3d 968, 975 (6th Cir. 2020) (quoting *Hooper v. Advance Am., Cash Advance Ctrs. Of Mo., Inc.*, 589 F.3d 917, 922 (8th Cir. 2009)), *abrogated in part*

10

*on other grounds by Morgan v. Sundance*, 596 U.S. 411 (2022)).  Thus, courts frequently find that a defendant waived its right to compel arbitration where it moved to dismiss a plaintiff's claims on the merits. *See, e.g. id.* at 974-975 (holding that "district court properly concluded that [defendant] waived its right to arbitrate" where defendant, among other things, filed a "motion to dismiss [that] was thoroughly enmeshed in the merits" of the case).

But "[n]ot every motion to dismiss is inconsistent with the right to arbitration." *Id.* at 975 (identifying motions to dismiss based on jurisdictional grounds as examples of motions that are not inconsistent with reliance on an arbitration provision).[2]  Indeed, there is no "bright-line rule" that a party waives its right to compel arbitration by filing a motion to dismiss – or by taking any other particular actions during the course of litigation. *Schwebke v. United Wholesale Mortgage LLC*, 96 F.4th 971, 976 (6th Cir. 2024).  Rather, the "the waiver analysis rests on the totality of the circumstances." *Id.*

---

[2] A panel of the Sixth Circuit made the same point in the now-vacated decision in *Speerly v. General Motors*, *LLC*, 115 F.4th 680 (6th Cir. 2024) *reh'g en banc granted, opinion vacated*, 123 F.4th 840 (6th Cir. 2024).  There, the court noted that filing a motion to dismiss a plaintiff's claims on the merits would not, "on its own," automatically constitute waiver of the right to arbitrate. *Speerly*, 115 F.4th at 713.

Here, the relevant circumstances persuade the Court that FCA did not knowingly waive its right to compel arbitration under the Arbitration Provisions when it moved to dismiss the Arbitration Plaintiffs' claims on the merits.

## 2

Where, as here, a plaintiff contends that a defendant waived its right to seek arbitration by filing a motion to dismiss on the merits, a key circumstance in the waiver analysis is whether the defendant "knew of its right to compel arbitration" when it moved to dismiss. *Newirth by and through Newirth v. Aegis Senior Communities, LLC*, 931 F.3d 935, 938 (9th Cir. 2019) *abrogated in part on other grounds by Morgan v. Sundance*, 596 U.S. 411 (2022). Whether the defendant had such knowledge is a critical factor because, in the arbitration context (as elsewhere), "[w]aiver . . . 'is the *intentional* relinquishment or abandonment of a *known* right.'" *Morgan*, 596 U.S. at 417 (emphasis added) (quoting *United States v. Olano*, 507 U.S. 725, 733 (1993)).[3]  Thus, "a finding of waiver might be inappropriate if the

---

[3] In *Morgan*, the Supreme Court noted that the question of whether a party may be precluded from seeking arbitration on the basis that the party previously acted inconsistently with an intent to arbitrate could conceivably be answered by reference to a number of different rules, including "waiver, forfeiture, estoppel, laches, or procedural timeliness." *Morgan*, 596 U.S. at 416. The Supreme Court declined to decide which of those rules was the best fit. Instead, the Supreme Court addressed the issue under the rubric of waiver because that is how the Eighth Circuit – from which the case arose – treated the issue. And the Supreme Court instructed the Eighth Circuit that, on remand, it could resolve the case by asking: did the defendant "knowingly relinquish the right to arbitrate by acting inconsistently with that right? *Id.* at 419. Like the Eighth Circuit, the Sixth Circuit treats the question as one of

party belatedly seeking arbitration was unaware of information rendering a claim arbitrable." *Solo*, 947 F.3d at 976.[4]

Here, FCA has persuaded the Court that it was not aware of its claimed arbitration rights under the Arbitration Provisions until shortly before it filed its motion to compel arbitration based on those provisions. As explained above, FCA was not a party to, and did not have possession of, the sales contracts containing those provisions. And there is no evidence in the record that FCA knew the provisions existed, saw the provisions, or had actual knowledge of their contents at any time before FCA filed its motion compel arbitration. FCA's lack of knowledge weighs strongly against a finding that FCA waived its right to seek arbitration by filing its earlier motion to dismiss.

The Arbitration Plaintiffs counter that FCA must have known, or at least had strong reason to believe, that the Arbitration Provisions existed much earlier. In support of that argument, the Arbitration Plaintiffs highlight that FCA frequently

---

waiver. *See, e.g.*, *Schwebke*, 96 F.4th at 974 (explaining that "[t]his case asks us to decide when a party has waived its contractual right to arbitrate by participating in litigation"). Thus, it is appropriate here to draw upon the Supreme Court's guidance concerning the parameters of waiver in *Morgan* and to focus on FCA's level of knowledge at the time it filed its motion to dismiss on the merits.

[4] *See also Trout v. University of Cincinnati Medical Center, LLC*, 743 F.Supp.3d 937, 946 (S.D. Ohio 2024) (explaining, and collecting cases in support of proposition that, that "a defendant's seeking a court's ruling on the merits of an arbitrable claim—*despite being expressly aware that he holds an arbitration right*—has been found to constitute an implied waiver of his arbitration right") (emphasis added).

moves to compel arbitration based upon arbitration provisions in the sales contracts between its dealers and FCA vehicle owners, and they say that these motions demonstrate that FCA is well aware that its dealers typically include standard arbitration provisions in their vehicle sales contracts. The Arbitration Plaintiffs insist that FCA should not be permitted to feign ignorance of its claimed arbitration rights in order to avoid a finding of waiver.

That is a serious argument. Indeed, another Judge on this Court recently concluded that it "taxe[d] credulity to posit that FCA was not aware of the standard sales documents [containing arbitration provisions] its dealers were using." *In re Chrysler Pacifica Fire Recall Prods. Liab. Litig.,* 715 F.Supp.3d 1003, 1007 (E.D. Mich. 2024) (holding that FCA waived its right to seek arbitration where it moved to dismiss claims on the merits before moving to compel arbitration).

But the Court does not accept this argument for at least two reasons. First, even if FCA knew when it filed its motion to dismiss the claims on the merits that "at least some Plaintiffs may be subject to arbitration agreements," FCA could not reasonably have filed a motion to compel arbitration at that time. To file such a motion, FCA would have had to know, at an absolute minimum, the terms of the applicable arbitration agreements. Without knowledge of those terms, FCA would not have been able to determine (much less present a reasoned argument) that a particular claim being asserted by a Plaintiff here was subject to arbitration. Nor

would FCA have been able to determine whether (or been able to reasonably argue that) the parties delegated gateway questions of arbitrability to the arbitrator. Here, then, even if FCA had reason to believe that some of the Plaintiffs' vehicle sales contracts may have contained arbitration provisions, it is hard to fathom how FCA could have filed a minimally sufficient motion to compel arbitration before it obtained those contracts. For that reason, FCA's failure to seek arbitration before it acquired the contracts should not be deemed a waiver of its ability to enforce its claimed arbitration rights.

Second (and on a related note), unlike in *In re Chrysler Pacifica*, the evidence before this Court shows that there were *no* "standard sales documents" between the Arbitration Plaintiffs and the dealerships that sold them their vehicles. As explained above, each of the Arbitration Plaintiffs had a different vehicle sales contract, and the Arbitration Provisions included in those contracts differed in some meaningful ways. Moreover, a quick review of the case law involving FCA's efforts to compel vehicle purchasers to arbitrate reveals still more key differences between arbitration provisions in FCA vehicle sales contracts. *See*, *e.g.*, *Speiker v. FCA US LLC*, No. 19-02150, 2020 WL 1972507, at *2 (C.D. Cal. Mar. 9, 2020) (involving arbitration provision in an FCA vehicle sales contract that did not include a delegation provision); *Parton v. FCA US LLC*, No. CIV-16-262, 2017 WL 913797, at *1 (W.D. Okla. Mar. 7, 2017) (involving arbitration provision in an FCA vehicle sales contract

that did not include a delegation provision and that excluded from arbitration certain state-law claims).   Simply put, FCA could not have moved earlier to compel arbitration based on a "standard" arbitration agreement entered into by all Plaintiffs because there was no such agreement.

On a related note, the Arbitration Plaintiffs further insist that even if FCA did not possess the Arbitration Provisions earlier in the case, the Court should nonetheless deem FCA to have waived its right to arbitrate because FCA "could have" and should have obtained the vehicle sales contracts that included the Arbitration Provisions from its dealers before "formal discovery began." (Resp. ECF No. 50, PageID.1546-1547.)  The Arbitration Plaintiffs seem to suggest that FCA could have demanded that the dealers turn over the vehicle sales contracts or could have obtained the contracts by filing a motion for leave to conduct early discovery and then serving subpoenas on the dealers for the contracts before formal discovery began.  The Court does not agree that FCA waived its right to compel arbitration by failing to take those steps.

First, the Arbitration Plaintiffs point to no evidence suggesting that FCA could have obtained the vehicle sales contracts directly from the dealers without a subpoena.  As FCA's counsel explained during the hearing on FCA's motion to dismiss, the dealers are independent business entities, and FCA has no right to compel the dealers to provide copies of their sales contracts with their customers.

16

(*See* 12/12/2023 Mot. Hr'g Tr., ECF No. 36, PageID.1190.)   The Arbitration Plaintiffs have likewise failed to identify any evidence that the dealerships would have been willing to provide the vehicle sales contracts without a subpoena.

Second, the Court does not believe FCA's failure to move for early discovery before filing its motion to dismiss rises to the level of a waiver of its right to compel arbitration.   FCA was up against a deadline for moving to dismiss (*see* Stipulated Order, ECF No. 22), and there would have been no guarantee that a motion to conduct early discovery would have been heard, much less decided in FCA's favor, before that deadline expired.   It was not unreasonable for FCA to protect its rights by filing the motion to dismiss when it did.   At a minimum, the filing of the motion to dismiss under these circumstances is not so flatly inconsistent with an intent to arbitrate that it should be deemed a waiver.

**3**

In addition, FCA's overall course of conduct was not so "completely inconsistent with any reliance on an arbitration agreement," *Solo*, 947 F.3d at 975, such that FCA should be deemed to have waived its right to seek arbitration by filing a motion to dismiss.   As noted above, at the first motion hearing before the Court, FCA explained that it was possible that some of the Plaintiffs may have signed vehicle sales contracts containing arbitration provisions, that those contracts were not then in FCA's possession, that FCA would be seeking the contracts in discovery,

and that FCA may move to compel arbitration based on those contracts. (*See* 12/12/2023 Mot. Hr'g Tr., ECF No. 36, PageID.1189-1190.)   FCA also raised arbitration as an affirmative defense in its Answer to the operative Complaint (*see* Answer, ECF No. 38, PageID.1352), and it noted in the parties' jointly filed discovery plan that it (1) "plan[ned] to seek" the "relevant contracts" from Plaintiffs during discovery and (2) would also be "subpoenaing records from third parties who sold . . . Plaintiffs' vehicles." (Discovery Plan, ECF No. 40, PageID.1362.)   Then, as soon as discovery commenced in early 2024, FCA subpoenaed the dealerships that sold the Arbitration Plaintiffs their vehicles.   Once the dealerships produced the vehicle sales contracts to FCA, FCA filed its arbitration motions.   In short, the "totality of the circumstances" present here persuade the Court that FCA did not act so inconsistently with the intent to seek arbitration as to warrant a finding of waiver. *Schwebke*, 96 F.4th at 976.   This is simply not a case with a "most compelling fact pattern" that warrants a finding of waiver. *JPD, Inc.*, 539 F.3d at 393.

**4**

Finally, the Arbitration Plaintiffs have not cited, and the Court has not identified, any case in which the Sixth Circuit has found that a defendant waived its right to seek arbitration under circumstances like those present in this case. The Arbitration Plaintiffs highlight the Sixth Circuit's finding of waiver in *Speerly*, 115 F.4th at 712-714, but that decision was recently vacated pending rehearing *en banc*,

*see* 123 F.4th 840 (6th Cir. 2024), and, in any event, it involved a much different set of circumstances.  The plaintiffs in *Speerly* brought claims against General Motors arising out of an alleged defect "present in the 8L45 and 8L90 transmissions of vehicles purchased from GM between 2015 and 2019." *Speerly*, 115 F.4th at 688. General Motors never filed a motion to compel arbitration.  Instead, it filed two motions to dismiss and then "engaged in over two years of litigation." *Id.* at 713.  At that point, General Motors made a "bare mention" of arbitration during a hearing on a motion to supplement the operative complaint. *Id.* at 714.  Then, in connection with later briefing on class certification, GM raised the issue of arbitration in a single "terse paragraph." *Id.* at 713.  Notably, GM did not "argue" in that briefing (or elsewhere to the district court) that it had been "unable to access the Plaintiffs' agreements" earlier. *Id.* at 714.  On that record, the Sixth Circuit concluded that the district court did not abuse its discretion when it found that General Motors had waived its right to seek arbitration. *See id.*

The contrasts between General Motors' conduct in *Speerly* and FCA's conduct here are obvious. FCA raised the issue of arbitration much earlier and more often, did file a substantial motion to compel arbitration, and did argue that it could not have obtained the Arbitration Plaintiffs' vehicle sales contracts nor moved to compel arbitration any earlier than it did.  In light of these material differences, *Speerly* does not compel a finding of waiver here.

The circumstances of this case likewise stand in sharp contrast to the other Sixth Circuit decisions cited by the Arbitration Plaintiffs in which that court found that a defendant had waived its right to seek arbitration. In *Schwebke*, for example, the Sixth Circuit found a waiver where the defendant "participated in extensive discovery—producing tens of thousands of pages of documents, taking and defending depositions, and issuing third-party subpoenas—without ever mentioning arbitration." *Schwebke*, 96 F.4th at 977. Then, when "discovery was nearly complete," the defendant moved to compel arbitration. *Id.* Moreover, the defendant in *Schwebke* "concede[d] that it had 'imputed knowledge'" of the parties' arbitration agreement, but only failed to raise it earlier "because its counsel was unaware of the [arbitration] clause." *Id.* at 976–77. Likewise, in *Solo*, the Sixth Circuit found waiver where the defendant, among other things, filed a motion to dismiss the merits of plaintiffs' claims and then "spent two years vigorously litigating the merits of the claims in the district court and on appeal" before it moved to compel arbitration. *Solo*, 947 F.3d at 975–76. Moreover, while the defendant in *Solo* argued that it lacked knowledge of the arbitration provision at issue, the Sixth Circuit noted that that argument "r[ang] hollow" given that the arbitration agreement was included the very contract the plaintiff sought to enforce in that litigation. *Id.* at 976. Thus, the court held that the defendant "knew or should have known all the information necessary to advance [its] arguments [in support of arbitration] before it filed its

motion to dismiss." *Id.*  Finally, in *Johnson Associates*, 680 F.3d at 718–19, the Sixth Circuit held that the defendant had waived its right to demand arbitration where the defendant failed to raise arbitration as an affirmative defense, filed a counterclaim, "and actively scheduled and requested discovery, including depositions, rather than moving to compel arbitration following the end of formal settlement discussions[.]" The facts of these cases are so different that none compel a finding of waiver here.

The facts of this case are also distinguishable from the two primary out-of-circuit cases that the Arbitration Plaintiffs cite for the proposition that FCA waived its right to seek arbitration by filing a motion to dismiss. (*See* Resp., ECF No. 50, PageID.1547-1548, citing *White v. Samsung Elecs. Am., Inc.*, 61 F.4th 334, 341 (3d Cir. 2023) and *Smith v. GC Servs. Ltd. P'ship*, 907 F.3d 495, 500 (7th Cir. 2018)). In *Smith*, the Seventh Circuit held that the defendant waived its right to seek arbitration where it engaged in litigation and delayed moving to compel arbitration for many months even though it should have suspected that plaintiff was subject to an arbitration agreement and "could have found the agreement through a routine internet search." *Smith*, 907 F.3d at 500.  Here, the Arbitration Plaintiffs do not suggest that FCA could have found the Arbitration Provisions through a basic internet search.  And in *White*, the Third Circuit held that the defendant waived its right to compel arbitration where it pursued litigation for more than one year even though it had sufficient information to have "definitively" determined much earlier

that the plaintiffs were subject to defendant's own standard terms and conditions, which contained arbitration provisions (the terms of which were obviously known to the defendant). *White*, 61 F.4th at 340–41. Here, there is no evidence that FCA continued to actively litigate after it had sufficient information to "definitively" determine (1) that the Arbitration Provisions existed or (2) the terms of those provisions.

### 5

For all of these reasons, the Court concludes that FCA has not waived any right it may have to arbitrate this dispute.

### C

The Arbitration Plaintiffs next argue that FCA lacks standing to seek arbitration pursuant to the Arbitration Provisions because FCA is not a party to the vehicle sales contracts containing those provisions. This, too, is a serious argument. But for the reasons explained below, the Court concludes that this argument must be addressed to, and decided by, an arbitrator. The Court therefore will not deny the motion to compel arbitration on the basis that FCA is not a party to the vehicle sales contracts.

### 1

"Generally, when asked to compel arbitration under a contract, a court determines whether the parties agreed to arbitrate their dispute." *Swiger v. Rosette*,

989 F.3d 501, 505 (6th Cir. 2021). "The FAA, however, allows parties to agree that an arbitrator, rather than a court, will determine '"gateway" questions of "arbitrability," such as whether the parties have agreed to arbitrate or whether their agreement covers a particular controversy.'" *Id.* (quoting *Rent-A-Center, West, Inc. v. Jackson*, 561 U.S. 63, 68–69 (2010)). "Such an agreement, commonly known as a delegation clause, requires '"clear and unmistakable" evidence that the parties agreed to have an arbitrator decide' arbitrability." *Id.* (quoting *Blanton v. Domino's Pizza Franchising LLC*, 962 F.3d 842, 844 (6th Cir. 2020)). "A valid delegation clause precludes courts from resolving any threshold arbitrability disputes[.]" *Id.* As the Sixth Circuit has explained, "[t]he practical effect of a delegation provision is that if arbitrability is challenged, then the arbitrator, not the court, must address the challenge. Such a challenge may come in the form of a coverage challenge or as an enforceability challenge. Regardless, the outcome is the same: a valid delegation provision removes judicial purview and transfers the question of arbitrability to an arbitrator." *Becker v. Delek US Energy, Inc.*, 39 F.4th 351, 355 (6th Cir. 2022).

However, an "[a]ttack[] [on] a delegation provision as invalid turns the question away from arbitrability of gateway issues to the validity of an arbitrator's authority to arbitrate arbitrability . . . . If the validity of a delegation provision is challenged in response to a motion to compel arbitration, then the court, rather than the arbitrator, must address those challenges." *Id.* But "[o]nly a specific challenge

to a delegation clause brings arbitrability issues back within the court's province." *Swiger*, 989 F.3d at 505. *See also Rent-A-Center*, 561 U.S. at 72 (explaining that "unless [a party] challenge[s] [a] delegation provision specifically," then "any challenge to the validity of [an arbitration agreement] as a whole" must be left for the arbitrator). "That test is hard to meet[.]" *Becker*, 39 F.4th at 356. "Under this circuit's precedent, to prevail in [the Arbitration Plaintiffs'] position, a party must 'show that *the basis of their challenge* is directed specifically to the delegation provision.'" *Id.* (emphasis in original) (quoting *In re StockX Customer Data Sec. Breach Litig.*, 19 F.4th 873, 886 (6th Cir. 2021)).

## 2

Turning to this case, the Court begins with a threshold question: do the Arbitration Provisions, through the Delegation Clauses, delegate questions of arbitrability to the arbitrator? The Court agrees with FCA that they do.

The Delegation Clauses provide "'clear and unmistakable' evidence that the parties agreed to have an arbitrator decide" arbitrability. *Swiger*, 989 F.3d at 505 (quoting *Blanton*, 962 F.3d at 844). The Delegation Clauses provide, for example, that "[a]ny claim or dispute . . . *including . . . the arbitrability of [any] claim or dispute"* may be resolved by arbitration. (Smith 2023 Agreement, ECF No. 47-4, PageID.1518; emphasis added. *See also* Vanderberg Agreement, ECF No. 47-5, PageID.1521 ("[t]he term 'dispute' also includes . . . any question regarding whether

24

a matter is subject to arbitration"); Blyth Agreement, ECF No. 47-2, PageID.1503 (defining a "claim" to include "the arbitrability of [a] claim, controversy, demand, dispute, counterclaim, or crossclaim").)

In *Swiger*, the Sixth Circuit held that nearly identical language and structure constituted "clear[] and unmistakabl[e]" evidence that the parties intended to delegate questions of arbitrability to the arbitrator. *Swiger*, 989 F.3d at 506. The contract in *Swiger* first provided that "You and Plain Green agree that any Dispute (defined below) will be resolved by Arbitration." (Swiger Arbitration Agreement, E.D. Mich. Case No. 19-cv-12014, ECF No. 1-3, PageID.16.) It then defined "Dispute" to include (1) "any claim or controversy of any kind between you and Plain Green or otherwise involving this Agreement or the Loan" and (2) "any issue concerning the validity, enforceability, or scope of this Agreement or this Agreement to Arbitrate." (*Id.*) The Sixth Circuit concluded that this language "clearly and unmistakably show[ed] that the parties agreed to arbitrate issues of arbitrability." *Swiger*, 989 F.3d at 506. The same is true with respect to the Delegation Clauses here.

### 3

As this Court explained at length in *Cunningham v. Ford Motor Co.*, No. 21-cv-10781, 2022 WL 2819115 (E.D. Mich. July 19, 2022), because the Delegation Clauses delegate questions of arbitrability to the arbitrator, the Sixth Circuit's

decision in *Swiger* compels the conclusion that it is for the arbitrator, not the Court,

to decide whether FCA, as a non-party to the vehicle sales contracts, may enforce

the Arbitration Provisions:

> In *Swiger*, the plaintiff "accepted a $1200 loan at an interest rate exceeding 350%." *Swiger*, 989 F.3d at 503. The plaintiff "also agreed to an arbitration provision, providing that any dispute ... related to [her loan] agreement [would] be resolved through binding arbitration." *Id*. (internal quotation marks omitted). As explained above, the arbitration provision further delegated to the arbitrator "any issue concerning the validity, enforceability, or scope of [plaintiff's loan] or this Agreement to Arbitrate." *Id.* Several months later, the plaintiff claimed that her loan violated both Michigan and federal law, and she sued multiple defendants, including certain non-parties to her loan. One of the defendants who was not a party to the loan then "filed a motion to stay the case in favor of arbitration. He argued that because [the plaintiff] agreed through a 'delegation clause' to arbitrate issues 'concerning the validity, enforceability, or scope' of the agreement, the court should stay the proceedings and compel arbitration of even threshold arbitrability questions." *Id.* at 504. The district court denied the defendant's motion "without mentioning the delegation clause." *Id.* at 506.
>
> On appeal to the Sixth Circuit, the defendant again argued that pursuant to the delegation clause, the arbitrator, not the court, had to decide whether the defendant, as a non-party to the contract, could compel the plaintiff to arbitrate the claims in question. *See id*. at 507. The plaintiff countered that whether the defendant could compel him (the plaintiff) to arbitrate was a "question of standing" that had to be decided by the court. *Id.* at 506–07. The Sixth Circuit was "persuade[d]" by the defendant's argument. In a passage worth quoting at length, the court explained:

As explained by one district court within our circuit, th[e] issue [of who decides whether a non-signatory may enforce an arbitration agreement that delegates questions of arbitrability to an arbitrator] presents a "logical conundrum" because "[e]ven with a delegation clause, courts must determine whether a contract exists at all," and "[i]f the nonsignatories are not parties to the contract, then the Plaintiff has no agreement with them." *De Angelis v. Icon Ent. Grp. Inc*., 364 F. Supp. 3d 787, 796 (S.D. Ohio 2019). But "[w]hether a nonsignatory can enforce the arbitration agreement is a question of the enforceability of the arbitration clause, as to that defendant." *Id.* at 797.

We recently addressed this issue in *Blanton [v. Domino's Pizza Franchising, LLC*, 962 F.3d 842 (6th Cir. 2020)]. There, a former employee of a Domino's Pizza franchise sued Domino's Pizza. 962 F.3d at 844. Domino's Pizza moved to compel arbitration under an agreement between the plaintiff and his former employer. Id. The plaintiff opposed the motion, "arguing that Domino's couldn't enforce the arbitration agreements because the company hadn't signed the agreements (only their franchises had)." *Id*. But the court concluded that the arbitrator must resolve that issue because the contract delegated questions of arbitrability; the parties agreed that Domino's Pizza's ability to enforce the agreement "involve[d] a 'question of arbitrability.'" *Id*. at 848.

Though the plaintiff in *Blanton* conceded the issue, the court signaled its agreement that a nonsignatory's ability to enforce an arbitration agreement concerned a question of arbitrability, favorably citing three circuit cases so holding: *Eckert/Wordell Architects, Inc. v. FJM Props. of Willmar, LLC*, 756 F.3d 1098, 1100 (8th Cir. 2014); *Brittania-U Nigeria, Ltd. v. Chevron USA, Inc.*, 866

27

F.3d 709, 715 (5th Cir. 2017); and *Apollo Comput., Inc. v. Berg*, 886 F.2d 469, 473–74 (1st Cir. 1989). We follow suit and find that whether [the defendant who did not sign the arbitration agreement containing the delegation clause] can enforce the arbitration agreement against [the plaintiff who signed the agreement] presents a question of arbitrability that [the plaintiff's] arbitration agreement delegated to an arbitrator.

*Id*. at 507.

Just as in *Swiger*, the question of whether Ford, as a non-signatory to the Sales Contracts, may compel Tri-State and Weiss to arbitrate under the Arbitration Provisions of those contracts is a question of "arbitrability" that has been delegated to the arbitrator under the Delegation Clause. The Court will therefore compel arbitration and allow the arbitrator to decide whether Ford may compel Tri-State and Weiss to arbitrate. *See, e.g., Lyman*, 2022 WL 856393, at *4 (following *Swiger* and concluding that because the arbitration provision of the contract signed by the plaintiff contained a delegation provision, *Swiger* "require[d]" the court to submit to an arbitrator the question of whether a non-signatory to the contract could compel the plaintiff to arbitrate); *Grabowski v. Platepass, LLC*, 2021 WL 1962379, at *4 (N.D. Ill. May 17, 2021) (citing *Swiger* and concluding that "the question of whether a purported nonsignatory can enforce an arbitration agreement concerns a question of arbitrability and, thus, must be decided by the arbitrator").

*Id.* at *4–5.

For all of the same reasons discussed at length in *Cunningham*, an arbitrator must decide whether FCA may enforce the Arbitration Provisions against the Arbitration Plaintiffs. *See also Bernardoni v. FCA US LLC*, No. 23-12881, 2024 WL

3103316, at *4 (E.D. Mich. June 20, 2024) (holding that arbitrator must decide whether FCA, as a non-party to a vehicle sales contract executed between a plaintiff and the plaintiff's dealership that contained an arbitration provision, may compel arbitration).

**4**

The Arbitration Plaintiffs present several arguments as to why the Court, not the arbitrator, must decide the threshold question of whether FCA may compel them to arbitrate their claims.  The Court addresses each of the Arbitration Plaintiffs' arguments below.  None persuade the Court that it must decide the question of arbitrability.

**a**

The Arbitration Plaintiffs first argue that there is not "clear and unmistakable evidence" that the parties intended to delegate the issue of arbitrability to the arbitrator because the Delegation Clauses are "subsumed" within the Arbitration Agreements and are not separate agreements for which the Arbitration Plaintiffs provided separate and independent consent. (Resp., ECF No. 50, PageID.1551-1552.)  However, in *Cunningham*, *supra*, the Court rejected the argument that a delegation clause had to stand alone in order to reflect a clear and unmistakable intent to delegate questions of arbitrability to an arbitrator:  In that case, the Court explained in detail why, under *Swiger*, an agreement to delegate threshold questions

29

of arbitrability need not be included in a standalone or separate contract that requires

its own separate consent:

> Weiss and Tri-State counter that there is not "clear and
> unmistakable" evidence of an intent to delegate questions
> of arbitrability to the arbitrator because "there is no stand-
> alone delegation clause" and because the Delegation
> Clause here is "subsumed within the same provision that
> requires arbitration." (Weiss and Tri-State Supp. Br., ECF
> No. 51, PageID.1788-1790.) But Weiss and Tri-State have
> not cited any decision from the Sixth Circuit or any other
> circuit court of appeals that holds a delegation clause must
> stand alone in order to "clearly and unmistakably"
> evidence an intent to delegate questions of arbitrability to
> an arbitrator. And *Swiger* confirms that there is no such
> requirement in this Circuit. There, the Sixth Circuit found
> that delegation language clearly evidenced the parties'
> intent to delegate questions of arbitrability to the arbitrator
> even though that language did not stand alone – and even
> though that language appeared in a broader arbitration
> provision that was structured just like the Arbitration
> Provision in this case. *See Swiger*, 989 F.3d at 506. *Swiger*
> is fatal to Tri-State and Weiss' argument that because the
> Delegation Clause does not stand alone, it does not
> "clearly and unmistakably" evidence an intent to delegate
> questions of arbitrability to the arbitrator.

*Cunningham*, 2022 WL 2819115, at *4. For all of the same reasons, the Court

concludes that the Delegation Clauses did not need to be included in a separately

signed, standalone agreement in order to reflect the Arbitration Plaintiffs' clear and

unmistakable intent.

The Arbitration Plaintiffs counter that the Supreme Court's post-*Cunningham*

decision in *Coinbase, Inc. v. Suski*, 602 U.S. 143 (2024), changed things. They insist

that Coinbase "requires FCA to prove consent to the delegation agreements specifically, which FCA failed to do." (Resp., ECF No. 50, PageID.1551-1552.) The Court disagrees.  In *Coinbase*, unlike here, the parties

> executed two [separate] contracts. The first contained an arbitration provision with a delegation clause; per that provision, an arbitrator must decide all disputes under the contract, including whether a given disagreement is arbitrable.  The second contract contained a forum selection clause, providing that all disputes related to that contract must be decided in California courts.

*Coinbase*, 602 U.S. at 145.  Thus, the question in *Coinbase* was "[w]hen two such contracts exist, who decides the arbitrability of a contract-related dispute between the parties—an arbitrator or the court?" *Id.*  In this case, there were not two contracts, one that called for binding arbitration and a second that provided the Court was the proper forum for the parties' dispute.  Instead, each Arbitration Plaintiff signed a single vehicle sales contract that contained a number of separate provisions, including the Delegation Provisions.  *Coinbase* does not speak to these circumstances.  Moreover, even if the Arbitration Plaintiffs are right that, under *Coinbase*, "a party seeking to compel arbitration (here, FCA) must prove consent not only to arbitrate but also to delegate the question of arbitrability" (Resp., ECF No. 50, PageID.1554, citing *Coinbase*, 602 U.S. at 149), FCA has made that showing.  The Delegation Clauses are included in the relevant vehicle sales

31

contracts, and when the Arbitration Plaintiffs signed and executed those sales contracts, they accepted all parts of the contracts, including the Delegation Causes.

**b**

The Arbitration Plaintiffs next argue that the Court should not enforce the Delegation Clauses because they are ambiguous. But many of the purported ambiguities they identify are found in parts of the Arbitration Provisions *other than* the Delegation Clauses. For example, the Arbitration Plaintiffs say that "Plaintiff James' purchase contract states everything must be arbitrated, but also states if the dealership 'hire[s] an attorney,' the Plaintiff must pay 'court costs.' What court costs are there if the parties solely intended arbitration?" (Resp., ECF No. 50, PageID.1554-1555; internal citation omitted.) The Arbitration Plaintiffs similarly point out that "Plaintiff Smith's arbitration provision states '[i]n any legal proceeding arising out of or related to this Buyer's Order, including arbitration and judicial proceedings, . . .' How can there be a judicial proceeding if everything must be arbitrated?" (*Id.*, PageID.1555; internal citation omitted). But even if those provisions are ambiguous – thus giving rise to questions about which disputes, if any, must be arbitrated – they do not render the Delegation Clauses, themselves, ambiguous. And the Arbitration Plaintiffs cite no authority for the proposition that the Delegation Clauses are somehow unenforceable because other aspects of the Arbitration Provisions may be unclear. On the contrary, the Delegation Clauses

assign to the arbitrator the task of resolving any ambiguities in the other aspects of the Arbitration Provisions.  Simply put, the Arbitration Plaintiffs may not evade the force of the Delegation Clauses by attacking different parts of the Arbitration Provisions. *See*, *e.g.*, *Becker*, 39 F.4th at 356 (explaining that a party attacking the enforceability of a delegation provision must "show that *the basis of their challenge* is directed specifically to the delegation provision") (internal citation omitted; emphasis in original).

The Arbitration Plaintiffs do arguably attack two specific Delegation Clauses as ambiguous, but those attacks fail.  First, the Arbitration Plaintiffs say that the Arbitration Provision in Plaintiff Vanderberg's vehicle sales contract is unclear with respect to the issue of delegation because it contains "two clauses" – "[o]ne in regular face type at the top of the page that includes an inconspic[u]ous delegation provision, and one in capitalization at the bottom of the page that does not include a delegation provision (and which does not incorporate the language above it)." (Resp., ECF No. 50, PageID.1555.)  The Arbitration Plaintiffs insist that these provisions conflict with one another with respect to whether questions of arbitrability are delegated to the arbitrator.  They say this conflict creates an ambiguity with respect to whether Vanderberg agreed to delegate questions of arbitrability to the arbitrator. (*See id.*)

Case 2:23-cv-10426-MFL-EAS   ECF No. 62, PageID.2019   Filed 02/21/25   Page 34 of 38

The Court disagrees with the Arbitration Plaintiffs' reading of Vanderberg's sales contract and disagrees that there is any conflict in the two parts of the Arbitration Provision highlighted by the Arbitration Plaintiffs. The Arbitration Provision in Vanederberg's contract is included on a single page, with one signature line. (*See* Vanderberg Agreement, ECF No. 47-5.) From the top to the bottom of the page, the provision proceeds to address a number of matters related to arbitration; it contains numerous clauses, not just two. (*See id*.) The provision begins by identifying the claims that will be subject to arbitration and by stating (in its Delegation Clause) that the matters to be arbitrated include "any question whether a matter is subject to arbitration under this Arbitration Agreement." (*Id.*) The capitalized provision identified by the Arbitration Plaintiffs appears at the bottom of the page and serves a purpose other than identifying the claims subject to arbitration. The purpose of that provision is to highlight for the parties the extent of rights waived and/or limited under the Arbitration Provision. The capitalized provision states, for instance, that in light of the parties' agreement to arbitrate, they have relinquished their right to a "JURY TRIAL," that their right "TO COMPEL OTHER PARTIES TO PRODUCE DOCUMENTS … IS MORE LIMITED," and that their "RIGHTS TO APPEAL … ARE VERY LIMITED." (*Id*.) The Court sees no tension between the capitalized part of the provision containing the warnings about rights waived and the earlier provision identifying the claims subject to arbitration; they serve different

34

purposes and address different matters.  Since there is no inconsistency between the provisions, reading them together does not create any ambiguity with respect to issue of delegation.

The Arbitration Plaintiffs likewise argue that Plaintiff Smith's vehicle sales contract is ambiguous with respect to delegation because it "has conflicting arbitration clauses, one with a delegation provision and one without." (Resp., ECF No. 50, PageID.1555.)  This argument refers to two different sections of Smith's sales contract: the list of "Additional Terms and Conditions" (Smith Agreement, ECF No. 47-4, PageID.1517-1518) and the "Addendum to Retail Installment Vehicle Sale Contract" (*id.*, PageID.1519.)  The Additional Terms and Conditions include an arbitration provision that contains the Delegation Clause. (*See id.*, PageID.1518.)  The Addendum also includes an arbitration provision, but that provision does not include a clause delegating questions of arbitrability to the arbitrator. (*See id.*)  The Arbitration Plaintiffs insist that the conflict created by the inclusion of the Delegation Clause in the Additional Terms and Conditions but not in the Addendum gives rise to an ambiguity as to whether the parties intended to delegate the question of arbitrability to the arbitrator.  (Resp., ECF No. 50, PageID.1555.)  That is a serious argument.

The Court concludes, however, that the Additional Terms and Conditions and the Addendum may be read in harmony with one another and that there is no

ambiguity with respect to the question of delegation.  The Addendum provides guidance as to its relationship with the Additional Terms and Conditions.  It states that (1) it and the Additional Terms and Conditions are to be "construed together" and (2) its terms "control" only where "there is a *direct conflict* between" the terms of the two provisions. (Smith Agreement, ECF No. 47-4, PageID.1519; emphasis added.)  The Court concludes that there is no "direct conflict" between the two provisions with respect to delegation: the Additional Terms and Conditions include the Delegation Clause while the Addendum is silent with respect to delegation. There simply is no "term" in the Addendum that conflicts with, or would supersede, the Delegation Clause in the Additional Terms and Conditions.  Thus, when the Additional Terms and Conditions and the Addendum are "construed together," it follows that, collectively, they delegate questions of arbitrability to the arbitrator. Therefore, an arbitrator, rather than the Court, must decide whether FCA may compel Smith to arbitrate his claims in this action.

### c

Next, the Arbitration Plaintiffs argue that the Delegation Clauses are unenforceable because they are "buried in 'fine print.'" (Resp., ECF No. 50, PageID.1556-1557.)  The Court disagrees.  The Delegation Clauses are included in conspicuous Arbitration Provisions in each vehicle sales contract.  Moreover, the Delegation Clauses are not disguised or buried deep within those agreements. (*See*,

*e.g.*, Blyth Agreement, ECF No. 47-2, PageID.1503; Smith Agreement; ECF No. 47-4, PageID.1518.)  Simply put, the Court is not persuaded that the Delegation Clauses were so far "buried" within the terms of the arbitration provisions that it would be unfair to enforce those clauses against the Arbitration Plaintiffs.

### d

Finally, the Arbitration Plaintiffs say that the Delegation Clauses "are not valid because they were entered into under fraudulent omissions and mistakes of fact." (Resp., ECF No. 50, PageID.1557.)  But the Arbitration Plaintiffs have not identified any *evidence* that FCA fraudulently induced any of the Plaintiffs to execute the Delegation Clauses specifically.  And while the Arbitration Plaintiffs say that "when the Plaintiffs entered into these agreements (with their dealerships), they did not know all the material facts, and they never would have agreed to delegate arbitrability had they known about the defect," (*id.*), they have not identified any mistake of fact with respect to the Delegation Clauses in particular.  Instead, the purported "mistake" related to the condition of the Arbitration Plaintiffs' vehicles. Because the Arbitration Plaintiffs have not developed any attack tied directly to the Delegation Clauses, their claims of fraud and mistake of fact fail. *See*, *e.g.*, *Becker*, 39 F.4th at 356 (explaining that "a party's challenge to a delegation clause must rest, in part, on different factual or legal grounds than the ones supporting its challenge to the arbitration agreement as a whole").

## III

For all of the reasons explained above, the Court **GRANTS** FCA's motions to compel arbitration (ECF Nos. 47, 52) and **STAYS** the Arbitration Plaintiffs' claims against FCA. *See Arabian Motors Group W.L.L. v. Ford Motor Co.*, 19 F.4th 938 (6th Cir. 2021) (holding that pursuant to Section 3 of the FAA, 9 U.S.C. § 3, district court should "stay[] . . . federal court action to permit the remaining claims to be arbitrated under the [FAA]").  If an arbitrator ultimately determines that FCA may not compel arbitration, the Arbitration Plaintiffs may file a motion in this action to lift the stay and proceed with the merits of their claims here.  If the arbitrator rules that FCA may compel arbitration, then at the conclusion of arbitration proceedings, FCA and/or the Arbitration Plaintiffs may file a motion to confirm or vacate the arbitrator's award or for other appropriate relief.

**IT IS SO ORDERED**.

s/Matthew F. Leitman
MATTHEW F. LEITMAN
Dated:  February 21, 2025         UNITED STATES DISTRICT JUDGE

I hereby certify that a copy of the foregoing document was served upon the parties and/or counsel of record on February 21, 2025, by electronic means and/or ordinary mail.

s/Holly A. Ryan
Case Manager
(313) 234-5126